

HENRY L. KIM*
JOSHUA S. LIM*
KENDAL SIM*
SEAN S. KWAK*
NICHOLAS J. DUBOIS*
JOHN CHEN*

\* Admitted in NJ & NY

**KIM, CHO & LIM, LLC**
Attorneys at Law

460 Bergen Boulevard, Suite 305, Palisades Park, NJ 07650
T: 201.585.7400  F: 201.585.7422

NY Office:
164-01 Northern Boulevard
2nd Floor
Flushing, NY 11358
T: 718.539.7400
F: 917.463.1590

Reply to NJ Address only

March 8, 2022

Via ECF
United States District Court
Southern District of New York
ATTN: HON. SARAH L. CAVE, U.S.M.J.
500 Pearl Street, Courtroom 18A
New York, New York 10007

      **RE:**    **HYEYOON JUNG v. GINA GROUP, INC., et al.**
              Case No.: 1:19-cv-08624

Dear Judge Cave,

      As Your Honor is aware, this office represents the plaintiff, Hye Yoon Jung ("Jung" or "Plaintiff"), in the above-referenced matter. This office and Fisher & Phillips LLP, the attorneys for defendant Gina Group LLC, improperly pled as Gina Group, Inc. ("Gina" or "Defendant"), jointly submit this letter to request that the Court approve the terms of the parties' settlement of the above-referenced matter. The fully-executed Settlement Agreement and Release ("Agreement") is annexed hereto as Exhibit A.

## STATEMENT OF THE CASE

### A. Plaintiff's Position.

      Plaintiff alleged claims for unpaid overtime premium and liquidated damages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as statutory damages under NYLL § 198(1-b), among other relief. Plaintiff had brought this action as a putative FLSA collective action and an FRCP 23 class action. Plaintiff's application for conditional certification of the FLSA collective had been denied, and she had not moved for class certification before this case settled. Plaintiff had also asserted claims for discrimination based on race and/or national origin. Those claims have been dismissed.

      Plaintiff alleged that she was an employee of Defendant, hired as a "designer" in the footwear department. Plaintiff alleges she regularly worked in excess of forty (40) hours in a workweek and therefore alleges she was entitled to payment of overtime premium. During her employment, Plaintiff was paid a fixed salary without any additional payment for overtime premium. Plaintiff further alleges that Defendant failed to provide a wage notice as required under the New York Labor Law ("NYLL") § 195(1).

Relevant to her entitlement to overtime wages, Plaintiff alleges that, although she was a "designer" while employed by Defendant, she did not perform duties or tasks that required any creativity or originality that would qualify her under the creative professional exemption for overtime under 29 C.F.R. § 541.302 or 12 N.Y.C.R.R. 142-2.2. Plaintiff alleges that her work involved mechanical labor for which she was instructed to strictly follow her supervisor's order to the most minute detail, and that her work was micro-managed by her supervisor. Plaintiff also alleges that she was tasked with other labor tasks, as opposed to a "designer's" work, including setting up the showroom (i.e., taking down shoes from the previous season and putting new shoes on the shelves) and trying on samples Defendant received from its manufacturers – because Plaintiff's shoe size was the sample size. In sum, Plaintiff asserted that she is not exempt from overtime premium, that she is entitled to the same, and as such, that she is also entitled to the statutory damages under NYLL § 198(1-b).

**B. Defendant's Position.**

Defendant rejects Plaintiff's allegations and claims. Gina hired Plaintiff on August 11, 2015 as a Designer in its Footwear Department. Plaintiff earned degrees in Accessories Design from the Fashion Institute of Technology, and, as part of Plaintiff's application process with Gina, Plaintiff was required to complete two projects highlighting her creativity. Plaintiff was a Designer in the Footwear Department for the duration of her employment with Gina and worked in Gina's New York headquarters. Plaintiff's starting salary was $35,000 and rose to $50,000 at the time of her termination from Gina on June 28, 2019 for performance reasons. At all relevant times, Plaintiff was an exempt, at-will employee of Gina.

As a Designer, Plaintiff's job responsibilities entailed researching trends and designing footwear for upcoming seasons. Her responsibilities included creating layouts, models, and depictions of footwear designs using her own intuition, imagination, and experience. Plaintiff could obtain ideas for her designs from an unlimited range of source material. Plaintiff graphically designed footwear using computer-aided design or "CAD" software.

In addition, as a Designer, Plaintiff was responsible for: conducting trend research and trend translation for the creation of seasonal mood boards/presentations based on her own originality and talent; managing project designs and communicating with vendors to negotiate rates, costs, delivery schedules, and design schemes; providing instruction to other Gina employees regarding design specifications, modifications, and CAD work; and creating footwear CADs based off limited instruction about underlying concepts.

Plaintiff's creative freedom and expertise as a Designer are documented. Gina possesses emails and drawings demonstrating Plaintiff's creativity. In addition, according to Plaintiff's own resume posted on her professional website showcasing her design capabilities,[1] Plaintiff wrote the following with respect to her role at Gina: "[d]esigned a complete line of Women, Men and Kids'

---

[1] Plaintiff's professional website, within which she stated she "design[ed] … Footwear & Handbag," also showcased the CADs of the designs that she created at Gina. That shows that she viewed her work at Gina as creative in nature.

2

footwear: Sandals, Boots, and casual categories for various constructions"; "[r]esponsible for line building and designing main division of Gina Group and private labels such as RUE 21, Ellen Tracy, Bebe Girls, Delia's Girl, Gold Toe, and other mass market accounts"; "[c]ollaborated with the VPs, Design Director, and Design team to develop design plans each season"; "[b]uilt collection lines through trend researching, shopping the market and pulling images from the website"; "[c]reated trend presentations for sales team and client"; and "[c]ommunicated with Gina Group China office to make prototype corrections, and confirmed sales samples."[2]

In sum, Plaintiff's job duties as a Designer and the salaries she received from Defendant met the applicable exemption requirements under the FLSA and New York law. Defendant properly classified Plaintiff as an exempt, creative professional. Furthermore, because Plaintiff was properly classified and is owed no overtime pay, Plaintiff was not provided with a deficient wage notice and is therefore not entitled to statutory damages under NYLL 198(1-b).

## **SETTLEMENT NEGOTIATIONS AND TERMS**

In an effort to avoid the time, expense, and inconvenience associated with further litigation, and without admitting or conceding any wrongdoing whatsoever on the part of Defendant, the parties agreed to participate in a settlement conference, which took place in-person before Magistrate Judge Cave on February 7, 2022. After the parties presented their respective positions, the parties were able to negotiate a settlement in principle with the assistance of Magistrate Judge Cave. The general terms of the parties' settlement are as follows: Defendant shall pay a total of $27,500, with $19,000 allocated as payment to Plaintiff on a Form W-2 (payment for her alleged unpaid wages) and $8,500 allocated as payment to Plaintiff's counsel, as Plaintiff's attorneys' fees, on a Form 1099.

After the settlement conference, the parties jointly drafted and signed a Settlement Agreement and Release, the terms of which are memorialized in Exhibit A.

## **THE TERMS OF SETTLEMENT ARE FAIR AND REASONABLE**

This Court,

> [i]n determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or

---

[2] Plaintiff's creativity and her proper classification as an exempt employee are corroborated by the declarations of fellow Designers filed in opposition to Plaintiff's Motion for Conditional Certification. (Doc. Nos. 42-3, 42-4, 42-5.)

collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citing Medley v. Am. Cancer Soc., 10-cv3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010).

By Plaintiff's calculation, assuming all her alleged hours based on Defendant's records and correct, and that Plaintiff were able to prove that she is not exempt from overtime premium, she would have been entitled to her unpaid wages of $12,740.69, plus liquidated damages in the same amount, $12,740.69, statutory damages of $5,000, and interest in an accruing amount of roughly $5,191.39, for a total of at least $35,672.77.

Plaintiff recognized, however, that the foregoing is subject to one critical determination: whether or not Plaintiff was an exempt employee. If she was not exempt, she would be able to recover more than $35,000; if Plaintiff was properly classified as exempt, she would be awarded nothing. Both Plaintiff and Defendant decided against taking this risk inherent in a trial and have decided to settle. Plaintiff's portion of the settlement payment is greater than her unpaid wages plus the statutory damages, but less than the same plus liquidated damages. It is within the range of Plaintiff's potential recovery (excluding attorneys' fees) and therefore is a reasonable compromise for avoiding the risks of further litigation.

Furthermore, by this settlement, the parties will avoid the burdensome costs of proving their respective claims and defenses. If this litigation were to proceed, the parties would have a heated dispute concerning Plaintiff's duties and tasks, involving the introduction of a multitude of exhibits and the testimony of several witnesses. Given the risks and expense of further litigation, the compromise by both parties, to which the parties had agreed to with the assistance of the Court, is a fair and reasonable one.

As for whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of this action, the parties' settlement negotiations were adversarial, lengthy, and only ended after the Court intervened during a settlement conference. At the settlement conference, the Court oversaw negotiations, commented on the parties' positions, and helped the parties reach a reasonable resolution. There was no fraud or collusion.

Considering the above factors, the parties respectfully request that the Settlement Agreement and Release be deemed fair and reasonable. With the assistance of her counsel, Plaintiff has made an informed decision to settle this matter and to avoid the burdens, costs, and risks associated with further litigation and potential collection if Plaintiff were to succeed at trial.

## **PLAINTIFF'S ATTORNEYS' FEES ARE FAIR AND REASONABLE**

Pursuant to the settlement agreement, Plaintiff will receive $19,000 and her counsel will receive $8,500. The amount allocated as attorneys' fees is thirty-one percent (31%), which is less than that which her counsel is entitled to under the retainer agreement between Plaintiff and her counsel, which is one-third (1/3) of net settlement (total settlement minus costs).

The courts in this Circuit "routinely grant[ ] requests for one-third of the settlement funds. Febus v. Guardian First Funding Group, LLC, 870 F.Supp.2d 337, 339 (S.D.N.Y. 2012) (citing Johnson v. Brennan, 10-cv-4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011)). While the Court may apply the "percentage of the fund" method or the lodestar method, the "trend in this Circuit is toward the percentage method." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005). This is because the "percentage of the fund" method aligns the interest of the Plaintiff and Plaintiff's counsel, whereas the lodestar method disincentivizes early settlement, "tempts lawyers to run up their hours, and compel[ ] district courts to engage in a gimlet-eyed review of line-item fee audits." Ibid. "Nonetheless, the Court still considers all the "*Goldberger* factors" to confirm the reasonableness of this award." Febus, 870 F.Supp.2d at 339. The Goldberger factors are:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of the litigation ...;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

Wal-Mart Stores, Inc., 396 F.3d at 121 (citing Goldberger, 209 F.3d at 49). Here, the factors weigh in favor of approving Plaintiff's counsel's fee representing less than one-third of the total settlement.

The first factor encompasses the lodestar method to a certain extent. Plaintiff's counsel has spent more than 190 hours, billed at the rate of $500 for partners, $450 for associates, and $150 for paralegals, for a total hourly billing of $84,939.30 as of February 3, 2022. Plaintiff's counsel's portion of the settlement is a mere one-tenth of the lodestar (i.e., "0.1" lodestar multiplier). Plaintiff's counsel's time records, in the form of an invoice, is annexed hereto as Exhibit B.

Notwithstanding, to provide information concerning the attorneys who worked on this matter:

- Joshua S. Lim, Esq., the partner at Kim, Cho & Lim, LLC, has practiced law since 2004 and has focused on labor law since around 2010.
- Sean S. Kwak, Esq. is an associate at Kim, Cho & Lim, LLC, and has graduated from the Buffalo Law School in February of 2017 and has practiced primarily in employment litigation and commercial litigation beginning in March of 2017 and until the present.
- Beverly Nwanna, Esq. is a former associate at Kim, Cho & Lim, LLC. Her background information is lost to the firm, but she had experience working as an assistant prosecutor for several years before she joined the firm in 2019.

Given the "0.1" lodestar multiplier, a rate of $50 is more than justified for the attorneys' hourly rates.

The second factor favors the award of attorneys' fees. The case involved a fact-intensive dispute concerning Plaintiff's, and in connection with the FLSA collective action certification, certain of her co-workers', classification as exempt under the creative professional exemption.

Risk is inherent in taking any litigation to completion. <u>Beckman v. KeyBank, N.A.</u>, 293 F.R.D. 467 (S.D.N.Y. 2013). The risk in this action was particularly greater because Plaintiff was putatively a "designer" and anticipated that Defendant will advance their defense based on the creative professional exemption. Plaintiff's counsel took on that risk and have successfully resolved the matter for Plaintiff to her satisfaction. On the fourth factor, although Plaintiff's motion for conditional certification under the FLSA was unsuccessful, Plaintiff's counsel takes pride in providing quality legal services to their clients.

The fee requested is less than one-third of the total settlement. As set forth above, the courts in this Circuit "routinely grant[ ] requests for one-third of the settlement funds. <u>Febus</u>, 870 F.Supp.2d at 339 (S.D.N.Y. 2012). The award of the fees, which is less favorable than what the terms of the retainer agreement between Plaintiff and her counsel provides, is supported by public policy considerations as well. A plaintiffs' counsel takes on the risk of litigation, not knowing the ultimate recovery and putting in upfront "investment" by representing plaintiff-employees on a contingency basis. Should plaintiffs' counsel be prevented from receiving the bargained for fees, attorneys representing employees would be discouraged from representing their clients on a contingency basis.

Considering the foregoing <u>Goldberger</u> factors, the fees requested herein are fair and reasonable under the circumstances.

## **CONCLUSION**

Plaintiff and Defendant have been represented by their respective counsel throughout this lawsuit. Under their counsel's guidance and advice, the parties have approved of and agreed to the terms of the settlement. Plaintiff's interests have thus been adequately safeguarded.

For the foregoing reasons, the parties believe the terms of the settlement are fair and reasonable and that this Court should approve of the same. A stipulation of dismissal will be filed upon the Court's approval of the parties' settlement.

Thank you for the Court's consideration in this matter.

    Respectfully submitted,

    */s/ Sean S. Kwak*

    Sean S. Kwak, Esq.
    Kim, Cho & Lim, LLC
    *Attorneys for Plaintiff*

cc: Attorneys for Defendant – via ECF